FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2018 SEP 20 PM 3: 16

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA,       )
                                )    Case No. 6:18-cv-1560-ORL
        Plaintiff,              )
                                )              40 - DCI
    v.                          )
                                )
PHILLIP MOTT HARRIS II, and     )
24/7 TAX SERVICES, LLC,         )
                                )
        Defendants.             )
_____)

## UNITED STATES' COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Phillip Mott Harris II and 24/7

Tax Services, LLC, alleges the following:

1.  This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Phillip Mott Harris II ("Harris") and 24/7 Tax Services, LLC ("24/7 Tax"),

and anyone in active concert or participation with them, from:

> a.  acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;
>
> b.  preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;
>
> c.  owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

    d. training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

    e. maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

    f. engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

    g. engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

2.      This action also seeks, under 26 U.S.C. § 7402, an order requiring Harris and 24/7 Tax to disgorge to the United States the ill-gotten gains that Harris and 24/7 Tax received (in the form of tax preparation fees) for the preparation of false federal tax returns.

## Authorization

3.      This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Harris resides in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

6.      Harris resides in Clermont, Florida. Harris has been preparing tax returns for others since at least 2011. He began working as an office manager at an LBS Tax Services

("LBS") store in Apopka, Florida in 2011. During 2012, he prepared tax returns at the LBS store that he managed in Leesburg, Florida.

7.       In late 2014, Harris started 24/7 Tax Services, LLC. Harris is the registered agent of 24/7 Tax Services, which has a principal address of 1713 Lake Vista Court, Clermont, Florida 34714.

## Background

8.       LBS began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2011, Gachette began franchising the LBS name through Loan Buy Sell, Inc., a corporation organized in the State of Florida, to his employees in order to broaden his revenue base. In early 2011, Harris began working as an office manager and tax return preparer at an LBS store owned and operated by Tonya Chambers. While working at Chamber's LBS tax preparation store, Harris learned how to prepare tax returns in an improper manner to generate bogus refunds and how to solicit business at large, retail business centers, such as Wal-Mart. In 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

9.       In 2014, Harris began working as a tax return preparer at Be Proud Tax Services (BPTS) – a tax preparation store owned and operated by Tonya Chambers. In 2016, the United States District Court for the Middle District of Florida enjoined Chambers and BPTS from preparing federal tax returns and owning and operating a tax preparation business. *See United States v. Demesmin, et al.*, 6:14-cv-1537-ACC-TBS (M.D. Fla.).

10.       In 2014, while still working for Tonya Chambers at BPTS, Harris opened 24/7 Tax Services. According to Harris, 24/7 Tax was founded as a joint venture with Jean

3

Demesmin. Demesmin was to provide the costs for starting 24/7 Tax, and, in return, he would share in the profits earned from the preparation of tax returns at 24/7 Tax's stores. In 2016, the United States District Court for the Middle District of Florida enjoined Demesmin from preparing federal tax returns and owning and operating a tax preparation business. *See United States v. Demesmin, et al.*, 6:14-cv-1537-ACC-TBS (M.D. Fla.).

11.     Harris prepares tax returns for compensation and is therefore a tax return preparer under 26 U.S.C § 7701(36)(A). In addition to personally preparing tax returns for compensation, Harris, as the owner of 24/7 Tax Services, LLC, employs individuals, directly or through 24/7 Tax Services, LLC, who prepare tax returns for compensation. The three stores operated under the 24/7 Tax Services name are located in Leesburg, Florida; Bushnell, Florida; and Wildwood, Florida.

## The Defendants' Activities

12.     The Defendants prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury. In 2015, 24/7 Tax Services prepared 801 federal income tax returns. These returns generated $4,234,628 in refunds, which means that the average refund for a customer of 24/7 Tax Services was $5,286.

13.     Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf. For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers

4

thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

14.    According to Harris, when he prepares a customer's tax return, he does not "like for them to look at the [computer] screen" on which he is preparing the customer's tax return. Showing a customer the information that a return preparer is inputting "just holds up stuff and, you know, people want to ask questions" and that customers "expect you to stop what you're doing and show them what you're doing..."

15.    The Defendants make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds. After completing the returns, the Defendants and those acting at their direction falsely tell the customers that these forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed. The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return.  These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

16.    The Defendants request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

17.    The Defendants engage in unlawful tax return preparation practices including:

a.    Making false claims for the Earned Income Tax Credit;

b.    Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

5

c.     Improperly claiming false filing status, such as Head of Household;

d.     Fabricating businesses and related business income and expenses;

e.     Fabricating household help income;

f.     Failing to provide customers with a copy of the completed tax return; and

g.     Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit and Failure to Comply with Due Diligence Requirements**

18.     The Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

19.     The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. *See* 26 U.S.C. § 32 and the accompanying Treasury Regulations. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

20.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and a certain amount of income, and decreases as income increases beyond a higher set of income. For example, in tax year 2014, the maximum EITC was $6,143 and was available to eligible individuals with three dependent children who earned income between $13,650 and $17,830. Some tax preparers who manipulate

reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

21.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

22.     The Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income. The Defendants also report bogus "Household Help" income on their customers' tax returns to falsely report earned income that improperly enables the customer to claim the EITC. As with reporting fabricated income on a Form Schedule C, reporting this fabricated HSH income enables the Defendants to falsely claim the EITC on customers' tax returns.

23.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. *See* 26 U.S.C. § 6695(g). These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not ignore the implications of information furnished to (or known by) the tax return preparer, and the tax return

preparer must make reasonable inquiries if a reasonable and well-informed tax return preparer knowledgeable in the law would conclude that the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete. *See* 26 C.F.R. § 1.6695-2 (2016). Tax return preparers must also document their compliance with these requirements and keep that documentation for three years. *Id*.

24.     The Defendants fail to comply with the due diligence requirements. The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

### Fabricated Schedule C Business Income and Expenses

25.     The Defendants prepare tax returns reporting non-existent businesses on bogus Forms Schedule C. On some of these returns, the Defendants report substantial business income, but little or no expenses. On other returns, the Defendants report substantial expenses, but little or no income. The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

26.     Hobby losses are not deductible as Schedule C losses. *See* 26 U.S.C. § 183. But a sign in the Bushnell office of 24/7 Tax Services encourages customers to let tax return preparers know if they have incurred expenses through a "hobby." Harris and 24/7 Tax report customers' hobbies – including recreational activities such as fishing or hunting – as businesses on fraudulent Schedule Cs attached to customers' federal income tax returns.

**Customer 1**

27.     For example, a tax return preparer at the Bushnell office of 24/7 Tax Services prepared the 2016 federal income tax return of Customer 1, filed jointly with Customer 1's spouse. The return preparer falsely reported on the Schedule C attached to the 2016 tax return that Customer 1 had a "fishing" business through which he received gross receipts totaling $0, and incurred expenses of $14,310, including $1,201 for meals and entertainment, $5,220 for car and truck expenses, and $1,098 for supplies, among other expenses, for a total loss of $14,310. Customer 1 told the preparer that one of his hobbies was fishing, but did not provide the reported expenses to the preparer.

28.     Customer 1 did not have a business and did not tell the return preparer that he had a business. By reporting a fabricated business loss, the return preparer claimed a bogus refund of $2,903 on Customer 1's 2016 federal income tax return.

**Customer 2**

29.     Harris prepared the 2011, 2012, and 2013 federal income tax returns of Customer 2. Harris falsely reported on the Schedule C attached to the 2011 tax return that Customer 2 had a "Caregiver" business through which she received gross receipts totaling $1,312, and incurred expenses of $22,624, including $10,199 for car and truck expenses (for a purported 19,999 business miles driven), $3,675 for utilities, $2,755 for repairs and maintenance, $1,875 for advertising, among other expenses, for a total loss of $21,312. Customer 2 did not own a business or incur any business-related expenses, nor did she provide the information reported on her tax return to Harris. By claiming the phony business loss, Harris claimed a fabricated EITC in the amount of $4,631 and a bogus refund of $9,921 on Customer 2's 2011 federal income tax return.

30.     Harris falsely reported on the Schedule C attached to the 2012 tax return that Customer 2 had a "Caregiver" business through which she received gross receipts totaling $1,165, and incurred expenses of $18,691, including $5,481 for car and truck expenses (for a purported 9,875 business miles driven), $4,215 for utilities, $2,755 for repairs and maintenance, $1,985 for travel among other expenses, for a total loss of $17,526. Customer 2 did not own a business or incur any business-related expenses, nor did she provide the information reported on her tax return to Harris. By claiming the phony business loss, Harris claimed a fabricated EITC in the amount of $5,236 and a bogus refund of $9,616 on Customer 2's 2012 federal income tax return.

31.     Harris falsely reported on the Schedule C attached to the 2013 tax return that Customer 2 had a "Caregiver" business through which she received gross receipts totaling $2,146, and incurred expenses of $17,619, including $5,956 for car and truck expenses (for a purported 10,541 business miles driven), $2,843 for repairs and maintenance, $4,395 for utilities, among other expenses, for a total loss of $15,473. Customer 2 did not own a business or incur any business-related expenses, nor did she provide the information reported on her tax return to Harris. By claiming the phony business loss, Harris claimed a fabricated EITC in the amount of $5,372 and a bogus refund of $9,217 on Customer 2's 2013 federal income tax return

**Customer 3**

32.     Harris prepared the 2017 federal income tax return of Customer 3 at the Wildwood office of 24/7 Tax Services, filed jointly with Customer 3's spouse. Harris falsely reported on the Schedule C attached to the 2017 tax return that Customer 3 had total expenses of $22,185, including $12,500 in "other expenses," for a total business loss of $20,678. Customer 3 had a lawn care company, but did not incur "other expenses" as part of that business. In Part V of

the Schedule C, which allows a taxpayer to explain what other expenses he or she incurred, Harris wrote that Customer 3 "built [a] garage for housing." Customer 3 built additional housing for personal reasons – not as part of a business – and did not tell Harris that the housing was built in connection with her business.

33.     By claiming this phony business loss, Harris claimed a bogus refund of $8,065 on Customer 3's federal income tax return.

### Customer 4

34.     Harris prepared the 2013 federal income tax return of Customer 4. Harris falsely reported on the Schedule C attached to the 2013 tax return that Customer 4 had a business as a "Mentor" through which he received gross receipts of $378 and incurred expenses of $18,897, including $8,609 for car and truck expenses (for a purported 15,237 business miles driven), $2,647 for repairs and maintenance, $1,768 for meals and entertainment, among other expenses, for a total loss of $18,519. Customer 4 did not own a business or incur any business-related expenses, nor did he provide the information reported on his tax return to Harris.

35.     By claiming the phony business loss, Harris claimed a fabricated EITC in the amount of $3,667 and a bogus refund of $10,625 on Customer 4's 2013 federal income tax return.

### Customer 5

36.     Harris prepared the 2013 federal income tax return of Customer 5, filed jointly with Customer 5's spouse. Harris falsely reported on the Schedule C attached to the 2013 tax return that Customer 5 had a "Carpenter" business through which he received gross receipts totaling $1,159, and incurred expenses of $20,683, including $9,242 for car and truck expenses (for a purported 16,357 business miles driven), $5,967 for utilities, $4,215 for travel, among

11

other expenses, for a total loss of $19,524. In 2013, Customer 5 worked full-time as a manager for a company and did not own a business or incur any business-related expenses, nor did he provide the information reported on his tax return to Harris.

37.     By claiming the phony business loss, Harris claimed a fabricated EITC in the amount of $4,473 and a bogus refund of $12,559 on Customer 5's 2013 federal income tax return.

38.     A different tax return preparer at the Bushnell office of 24/7 Tax Services prepared the 2014 federal income tax return of Customer 5, filed jointly with Customer 5's spouse. The return preparer falsely reported on the Schedule C attached to the 2014 tax return that Customer 5 had a "Carpenter" business through which he received gross receipts totaling $1,289, and incurred expenses of $24,106, including $10,373 for car and truck expenses (for a purported 18,523 business miles driven), $5,687 for supplies, $4,125 for travel, among other expenses, for a total loss of $22,817. In 2014, Customer 5 worked full-time as a manager for a company and did not own a business or incur any business-related expenses, nor did he provide the information reported on his tax return to the tax return preparer.

39.     By claiming the phony business loss, Harris claimed a fabricated EITC in the amount of $5,086 and a bogus refund of $12,956 on Customer 5's 2013 federal income tax return.

### Customer 6

40.     Harris reviewed and finalized the 2013 federal income tax return of Customer 6 and is listed as the tax return preparer on the return even though a different return preparer aided in preparing the return. Harris and the other return preparer falsely reported on the Schedule C attached to the 2013 tax return that Customer 6 had a "Haircare" business through which she

received gross receipts totaling $1,123, and incurred expenses of $27,914, including $10,425 for car and truck expenses (for a purported 18,451 business miles driven), $4,752 for supplies, $3,926 for travel, $5,891 for utilities, among other expenses, for a total loss of $26,791. Customer 6 did not own a business or incur any business-related expenses, nor did she provide the information reported on her tax return to Harris or the other tax return preparer.

41.     By claiming the phony business loss, Harris and the other tax return preparer claimed a bogus refund of $11,022 on Customer 6's 2013 federal income tax return.

42.     A different tax return preparer at 24/7 Tax Services prepared the 2014 Tax Return of Customer 6. The return preparer falsely reported on the Schedule C attached to the 2013 tax return that Customer 6 had a business as a "Hairstylist" through which she received gross receipts totaling $2,789, and incurred expenses of $25,347, including $11,095 for car and truck expenses (for a purported 19,812 business miles driven), $5,915 for supplies, $3.456 for utilities, among other expenses, for a total loss of $22,558. Customer 6 did not own a business or incur any business-related expenses, nor did she provide the information reported on her tax return to the return preparer.

43.     By claiming the phony business loss, the return preparer claimed a bogus refund of $10,565 on Customer 6's 2014 federal income tax return.

## Intentionally Claiming an Improper Filing Status

44.     The Defendants prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

45.     The Defendants file separate returns for married couples who are not living apart,
improperly using the "Head of Household" or "Single" filing status, both of which are
unavailable to married couples living together. Often, this is an attempt to increase the claimed
EITC; a qualifying couple with at least two children who, together, might otherwise receive a
single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each
unlawfully receive a refund of $3,000 or more, by both falsely claiming Head of Household or
single status and each claiming at least one dependent.

**Customer 7**

46.     For example, Harris prepared Customer 7's 2017 federal income tax return at the
Wildwood office of 24/7 Tax Services. Harris did not ask Customer 7 any questions about her
marital status, and Customer 7 did not provide Harris any information about her marital status.
Customer 7's 2017 tax return falsely claimed head of household filing status, even though
Customer 7 was married in 2017. Falsely claiming this filing status on Customer 7's tax return
enabled the Defendants to improperly claim an inflated tax refund.

**Bogus HSH Income**

47.     The Defendants also report bogus "Household Help" income on their customers'
tax returns to falsely report earned income that improperly enables the customer to claim the
EITC. Household Help income ("HSH") is paid to individuals typically hired to perform
household work, and these individuals are considered employees of the person for whom they
perform the household work; the employer determines and controls the work performed by the
individual. The individual receiving the income may be paid in cash or non-cash benefits, on an
hourly, weekly, or monthly basis, for jobs such as babysitting, house cleaning, yard work, health

care, or driving. Individuals who receive HSH receive Forms W-2 reporting income received and taxes withheld, just as with any other employment.

48.     The Defendants report bogus HSH income on Line 7 of the Form 1040 income tax return. As with reporting fabricated income on a Form Schedule C, reporting this fabricated HSH income enables the Defendants to falsely claim the EITC on customers' tax returns. 24/7 Tax prepared at least 125 tax returns in 2016 reporting HSH income.

### Customer 8

49.     For example, Harris prepared the 2016 federal income tax return of Customer 8 at the Leesburg office of 24/7 Tax Services. Harris reported $20,191 in household help income on Line 7 of Customer 8's tax return. Customer 8 did not earn $20,191 of income in 2016 and did not tell Harris she earned that much income.

50.     By falsely reporting this bogus HSH income, Harris fraudulently claimed an EITC of $5,850 and a bogus refund of $8,429 on Customer 8's 2016 tax return.

51.     A different tax return preparer at 24/7 Tax Services prepared the 2017 federal income tax return of Customer 8. The tax return preparer reported $17,856 in household help income on Line 7 of Customer 8's tax return. Customer 8 did not earn $17,856 of household help income in 2017 and did not tell Harris she earned that much income.

52.     By falsely reporting this bogus HSH income, the tax return preparer fraudulently claimed an EITC of $6,318 and a bogus refund of $8,546 on Customer 8's 2017 tax return.

### Customer 7 (continued)

53.     Harris reported $11,367 of income on Line 7 of Customer 7's 2017 federal income tax return. Customer 7 did not earn $11,367 in household help income and did not tell Harris that she earned that much income.

54.    By falsely reporting this bogus income, Harris fraudulently claimed an EITC of $5,119 and a bogus refund of $6,374 on Customer 7's 2017 tax return.

## Failure to Provide Customers with Copies of their Completed Tax Returns in Violation of 26 U.S.C. § 6701(a)

55.    The Defendants fail to provide customers with copies of their completed tax returns. For example, Customer 8 did not receive a copy of her 2016 or 2017 federal income tax returns. The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer. By giving a copy of the tax return to the customer, the customer is able to determine the amount of fees that the Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return. The Defendants failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from their customers.

56.    Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

## Unconscionable and Undisclosed Fees

57.    The Defendants charge unconscionably high fees to prepare tax returns, mostly through added fees which are typically charged without customers' knowledge. The Defendants charge these high fees to prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have prepared a basic Form 1040 tax return.

58.    For example, Harris charged Customer 5 nearly $1,000 to prepare his 2013 federal income tax return. And a different return preparer at 24/7 Tax Services charged Customer 5 nearly $1,000 to prepare his 2014 federal income tax return.

59.     The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns. The Defendants do not disclose the full amount of the fee and, when having the customer sign forms showing the fee, do not explain to the customer what the customer is signing.

60.     The Defendants charge additional fees for each form and schedule (such as a Schedule C or a Form 8863 for an education credit) attached to the Form 1040 tax return. The Defendants charge separate fees for forms and schedules such as the electronic filing authorization (Form 8879) which is required for e-filing, the EITC qualifying child form (Schedule EIC), and the related EITC due diligence checklist (Form 8867), which must be completed in connection with a claim for the EITC. These fees result in a total tax return preparation fee much higher than the amount advertised.

61.     The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants to prepare and file false or fraudulent tax returns claiming excessive refunds based on bogus claims and associated forms and schedules.

62.     Because the Defendants target low to moderate income individuals, the high fees frequently can pose a significant financial hardship for customers. Customers may be required to pay back the improper refunds that they receive. Because the Defendants deduct their high fees directly from their customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees. Thus, customers are then out-of-pocket the high fees that the Defendants charged.

63.     The Defendants also routinely and intentionally fail to disclose to customers all fees charged. The Defendants present forms to customers to sign, including a form

acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing. Customers are often surprised to learn that the refund requested on their return is hundreds of dollars more than the refund amount that they received after the fees were deducted.

64.     The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund. By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

65.     The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

## Harm Caused by the Defendants

66.     The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

67.     The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

68.     Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants.

69.     The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting their false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers. Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

70.     The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because

they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

71.     Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

72.     The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers. An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

**Count I**
**Injunction under 26 U.S.C. § 7407**

73.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

    a.     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

20

b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c. Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d. Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e. Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

74.     Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

75.     Harris and 24/7 Tax Services, LLC, as shown above in paragraphs 8 through 73, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return.

76.     Harris and 24/7 Tax Services, LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions. Harris and 24/7 Tax Services, LLC, through the actions described above in paragraphs 8 through 73, also recklessly or intentionally disregard IRS rules or regulations. Harris and 24/7 Tax Services, LLC failed to provide reasonable and appropriate procedures to prevent employees from engaging in conduct subject to penalty under 26 U.S.C. § 6694 and, conversely, encourage the filing of false tax returns.

77.     Harris and 24/7 Tax Services, LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011). Harris and 24/7 Tax Services, LLC fail to conduct proper due diligence or comply with the due diligence requirements.

78.     Harris and 24/7 Tax Services, LLC's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard of IRS rules and regulations.

79.     Harris and 24/7 Tax Services, LLC, and those acting in concert with them and at their direction, have continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Harris and 24/7 Tax Services, LLC have not conducted, let alone documented, the required due diligence procedures.

80.     Harris and 24/7 Tax Services, LLC also fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

81.     Harris's and 24/7 Tax Services, LLC's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

82.     Harris's and 24/7 Tax Services, LLC's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal

revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

83.     If Harris and 24/7 Tax Services, LLC are not enjoined from all tax preparation, they, and those acting in concert with them and at their direction, are likely to continue to prepare and file false and fraudulent tax returns.

84.     Harris's and 24/7 Tax Services, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of income, expenses, and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Harris's and 24/7 Tax's interference with the proper administration of the internal revenue laws. Accordingly, Harris and 24/7 Tax Services, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

## Count II
## Injunction under 26 U.S.C. § 7408

85.     Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

86.     Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate

to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

87.    Harris and 24/7 Tax Services, LLC, through the actions detailed above in paragraphs 8 through 73, assist, and/or advise with respect to the presentation and preparation of federal tax returns for customers that they know will understate their correct tax liabilities, because they knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus income, expenses, and deductions. Harris and 24/7 Tax Services, LLC procured and assisted with the preparation of false and fraudulent tax returns by filing tax returns they knew were false or fraudulent, and by employing tax return preparers engaging in tax fraud. Harris and 24/7 Tax Services, LLC have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

88.    Harris and 24/7 Tax Services, LLC are likely to continue violating the law absent an injunction. Tax return preparation is Harris's and 24/7 Tax Services, LLC's primary source of revenue. To maximize that income, Harris and 24/7 Tax Services, LLC, and the tax return preparers employed by 24/7 Tax Services, LLC, prepare returns with false claims. That conduct, in turn, gives Harris and 24/7 Tax Services, LLC a competitive edge over law-abiding tax return preparers. It also provides a means for Harris and 24/7 Tax Services, LLC to further exploit their customers by charging them unconscionably high fees, while Harris's and 24/7 Tax Services, LLC's fraud simultaneously and callously exposes their customers to possible civil and criminal liability.

89.    If the Court does not enjoin Harris and 24/7 Tax Services, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The preparation of tax returns by Harris and 24/7 Tax Services, LLC, and those acting in concert with them and at their

direction, on which they knowingly reduce their customers' tax liabilities by claiming improper expenses and deductions is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

90.     Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

91.     Harris and 24/7 Tax Services, LLC have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws through the actions described above in paragraphs 8 through 73, including, but not limited to, preparing tax returns that negligently, recklessly, and/or fraudulently understate customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that understate customers' tax liabilities.

92.     Unless enjoined, Harris and 24/7 Tax Services, LLC, and those acting in concert with them and at their direction, are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Harris and 24/7 Tax Services, LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

93.     While the United States will suffer irreparable injury if Harris and 24/7 Tax Services, LLC are not enjoined, Harris and 24/7 Tax Services, LLC will not be harmed by being compelled to obey the law.

25

94.    Enjoining Harris and 24/7 Tax Services, LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Harris's and 24/7 Tax Services, LLC's illegal conduct and the harm it causes the United States and Harris's and 24/7 Tax Services LLC's customers.

95.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

### Count IV
### Disgorgement under 26 U.S.C. § 7402(a)
### Necessary to Enforce the Internal Revenue Laws

96.    Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

97.    Harris's and 24/7 Tax Services, LLC's conduct, described above in paragraphs 8 through 73 substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them. They have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

98.    Harris's and 24/7 Tax Services, LLC are not entitled to these ill-gotten gains. But for Harris and 24/7 Tax Services, LLC's conduct, these bogus refunds would not have been issued. The Court should enter an order under 26 U.S.C. § 7402(a) requiring Harris and 24/7 Tax Services, LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Harris and 24/7 Tax Services, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

26

A. That the Court find that Harris and 24/7 Tax Services, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and have continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B. That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Harris and 24/7 Tax Services, LLC from acting as federal tax return preparers;

C. That the Court find that Harris and 24/7 Tax Services, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D. That the Court find that Harris and 24/7 Tax Services, LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Harris and 24/7 Tax Services, LLC, and all those in active concert or participation with them, from:

(1)     acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(2)     preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

27

(3)     owning, operating, managing, working in, investing in, providing capital
        or loans to, receiving fees or remuneration from, controlling, licensing,
        consulting with, or franchising a tax return preparation business;

(4)     training, instructing, teaching, and creating or providing cheat sheets,
        memoranda, directions, instructions, or manuals, pertaining to the
        preparation of federal tax returns;

(5)     maintaining, assigning, holding, using, or obtaining a Preparer Tax
        Identification Number (PTIN) or an Electronic Filing Identification
        Number (EFIN);

(6)     engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694,
        6695, 6701, or any other penalty provision in the Internal Revenue Code;
        and

(7)     engaging in any conduct that substantially interferes with the proper
        administration and enforcement of the internal revenue laws.

F. That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring

Harris and 24/7 Tax Services, LLC to immediately and permanently close all tax return

preparation stores that they own directly or through any entity, and whether those stores do

business as 24/7 Tax Services, LLC or under any other name;

G. That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing

a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information

has been removed), electronics, and furniture, for all tax return preparation stores that Harris or

24/7 Tax Services, LLC owns directly or through any entity, and whether those stores do

business as 24/7 Tax Services or under any other name;

H. That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Harris and

24/7 Tax Services, LLC, directly or through any entity, from assigning, transferring, or selling

any franchise agreement, independent contractor agreement, or employment contract related to

24/7 Tax Services, LLC or any other tax return preparation business to which they or any entity

under their control is a party;

28

I. That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Harris and 24/7 Tax Services, LLC from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Harris and 24/7 Tax Services, LLC, or any other business or name through which Harris or 24/7 Tax Services, LLC, or those acting at their direction have at any time since 2013 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Harris or 24/7 Tax Services, LLC, or any other business or name through which Harris and 24/7 Tax Services, LLC prepare tax returns or own or franchise a tax return preparation business, a list of customers or any other customer information for customers for whom Harris and 24/7 Tax Services, LLC, or any other business or name through which Harris, 24/7 Tax Services, LLC, or those acting at their direction have at any time since 2013 prepared a tax return; and (3) selling to any individual or entity any proprietary information pertaining to 24/7 Tax Services, LLC and any other business or name through which Harris, 24/7 Tax Services, LLC, or those acting at their direction have at any time since 2013 prepared a tax return;

J. That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Harris and 24/7 Tax Services, LLC to disgorge to the United States the proceeds (the amount of which is to be determined by the Court) that Harris and 24/7 Tax Services, LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make false and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2013 by Harris and 24/7 Tax Services, LLC, or anyone acting at their direction, including but not limited to returns prepared at 24/7 Tax Services or any other tax preparation stores owned or controlled by Harris or 24/7 Tax Services, LLC;

K. That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Harris and 24/7 Tax to contact, within thirty days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Harris, 24/7 Tax Services, LLC, and their managers and preparers prepared federal tax returns or claims for a refund from 2014 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

L. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Harris and 24/7 Tax Services, LLC to produce to counsel for the United States, within thirty days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Harris, 24/7 Tax Services, LLC, and their managers and preparers prepared federal tax returns or claims for a refund from 2014 and continuing through this litigation;

M. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Harris and 24/7 Tax Services, LLC to produce to counsel for the United States, within thirty days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Harris and 24/7 Tax Services, LLC, from 2014 to the present;

N. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Harris and 24/7 Tax Services, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Harris and 24/7 Tax Services, LLC from 2014 to the present, within fifteen days of the Court's order, and

30

provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Harris and 24/7 Tax Services, LLC provided a copy of the Court's order;

O. That the Court retain jurisdiction over Harris and 24/7 Tax Services, LLC, and over this action, to enforce any permanent injunction entered against them;

P. That the United States be entitled to conduct discovery to monitor Harris' and 24/7 Tax Services, LLC's compliance with the terms of any permanent injunction entered against them; and

Q. That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

Dated:  September 19, 2018

MARIA CHAPA LOPEZ
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*Samuel Robs*

SAMUEL ROBINS
DANIEL A. APPLEGATE
ALISON A. YEWDELL
JARED S. WIESNER
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0668
Fax: (202) 514-6770
Samuel.p.robins@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Samuel Robins, U.S. Department of Justice, Tax Div., (202) 307-0668
P.O. Box 7238, Ben Franklin Stn., Washington, D.C. 20044

## DEFENDANTS

Phillip Mott Harris II and 24/7 Tax Services, LLC

County of Residence of First Listed Defendant   Lake
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **IMMIGRATION** | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. sections 7407, 7408, and 7402(a)
Brief description of cause:
Suit for injunction barring defendants from preparing tax returns and an order to disgorge ill-gotten gains

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
09/19/2018

SIGNATURE OF ATTORNEY OF RECORD
*Samuel Robins*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____